OSTROWSKI *v.* LAPINSKI.

TRUSTS—FRAUD—EVIDENCE—SUFFICIENCY.

    In a suit by a mother against her daughter and others, alleging fraud by the daughter in obtaining money belonging to plaintiff, and praying that same be treated as trust funds, the decree of the court below ordering return of the money to plaintiff, *held,* not justified by the record, which shows that it was turned over to the daughter charged with the care of her father for the rest of his life, that she is caring for him in her home, and that from aught that appears she is likely to continue to do so.

Appeal from Wayne; O'Brien (Ernest A.), J. Submitted April 5, 1929. (Docket No. 87, Calendar No. 34,301.) Decided June 3, 1929.

Bill by Carolina Ostrowski against Lottie Lapinski and others for an accounting. From decree for plaintiff, defendants appeal. Reversed and bill dismissed.

*Uno S. Heggblom,* for plaintiff.

*Stan. ·C.* and *Chester Pietraszewski,* for defendants.

SHARPE, J. The plaintiff and her husband, the defendant Joseph, were living together in Duryea, Pennsylvania, in 1927. The home in which they lived and another small residence on the same lot were deeded by the husband to plaintiff in 1903. She was at the time of the hearing 63 years of age and he past 70. He had worked in the mines, was some-

what crippled, and had lost the sight of one eye. He had been somewhat addicted to the intemperate use of intoxicating liquor. They had a family of five children, four sons, all grown to manhood, two of whom lived at Duryea and two in Detroit, and a daughter, Lottie Lapinski, who lived with her husband, William, in Detroit. They are two of the defendants herein.

In July, 1927, the plaintiff suffered a paralytic stroke. The daughter at once went to see her. She advised the disposal of the property at Duryea, and wanted her father and mother to remove to Detroit and live with her and her husband in their home. The property was sold, and the proceeds thereof, amounting to $5,600, after payment of some expenses, came into the possession of the daughter. It is her claim that the mother at that time made her a present of $1,000. The father, mother, and daughter came to Detroit on September 6th. On the 7th the $4,600 was deposited in the defendant bank in the joint names of plaintiff and her daughter, and the $1,000 in the daughter's personal account in that bank. It is the claim of the daughter and her husband that plaintiff gave $2,000 of her money to her husband; that they added thereto $500 of the money plaintiff had given to the daughter, and that on their promise to support and maintain him (father) as long as he lived he turned this money over to them. At all events, a written undertaking to that effect, in which the receipt of the money was acknowledged, was executed by the three of them. The plaintiff was not present at the time. The daughter and her husband purchased a lot in Detroit with a part of the money, for which they paid $2,150. The sons living in Detroit learned of this. They testified that the mother was not being properly cared for by the daughter. They finally took her away, and have

cared for her since that time. Plaintiff herself drew $2,499, all but $1, of the balance of the money out of the bank on December 19th.

In her bill of complaint plaintiff alleges that her daughter fraudulently induced her to dispose of her property at less than its fair value; that her purpose was to secure the proceeds and convert them to her own use; that plaintiff did not knowingly and understandingly assent to the withdrawal of the $2,000 from the bank, or give it to her husband, and that she had no knowledge of the agreement above referred to, and she prays for an accounting of the moneys belonging to her which came into the hands of the daughter, and that the purchase of the lot be treated as one made out of trust funds and that the title thereto be transferred to her. The trial court made several efforts to bring about a settlement, but, failing to do so, granted plaintiff the relief prayed for as to the lot, and as to the $500, a part of the $1,000, decreed that it should be equally divided between plaintiff and her husband. The defendants, except the bank, appeal.

We have had much difficulty in satisfying ourselves from this somewhat voluminous record as to the mental condition of the plaintiff and whether the daughter secured an undue advantage over her, due thereto. It clearly appears that plaintiff was discouraged over her physical condition before they left Duryea and after they came to Detroit. She believed that she had not long to live. She had under her control all of the property they then had. What was more natural than for her to feel that her aged husband, then unable to perform manual labor, should be taken care of, and that it would be best for him to remain in the daughter's home, where he

seemed to be happy and contented? The arrange-
ment for the deposit of the money in the defendant
bank was made at the daughter's home. The man-
ager of the bank went there when the check was
drawn by which the money was turned over to the
husband, and by him to the daughter. He talked to
plaintiff about the matter, and testified that she ap-
peared to understand what was being done, and, as
she could not write, placed her finger prints upon the
check as a signature thereto. On his return to the
bank he charged her account with the amount of the
check, and credited it to the daughter's account as
directed.

In urging a settlement, the trial court said:

"I would like to be able to deed back the property
in the joint names of these two people. I want them
to live together. I do not want the father to go back
and live there and then possibly not have a home
or not have anything to live on. I want what little
they have to be saved for both of them so that they
may have the benefit of it now in their remaining
days."

It is unfortunate that this suggestion was not
acted upon and a settlement effected pursuant there-
to. Under the decree, substantially the entire fund
is returned to plaintiff. In our opinion, the evidence
did not justify this being done. The mother is un-
der the care of her sons in Detroit, and the sum of
$2,500 now in her hands will, in a measure at least,
provide for her needs during the remainder of her
life. The father is with the daughter and her hus-
band in their home, and from aught that appears
they will be likely to perform the contract entered
into with him for his support and maintenance. The
fund they have received is charged therewith.

With some reluctance, we have concluded that the record justifies a reversal of the decree and a dismissal of plaintiff's bill. No costs were allowed in the circuit court, and we allow none here.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.